**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 04:21 PM September 29, 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| RONALD E. FAIDLEY, | ) | CASE NO. 11-60477 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |

   The issue before the court is the proper distribution of chapter 13 plan payments made by Ronald E. Faidley ("Debtor") that resulted in a distribution to general unsecured creditors greater than the dividend specified in Debtor's confirmed chapter 13 plan. Complicating the matter, Debtor passed away before the completion of his chapter 13 payments. Christine F. Becker ("Becker") was appointed administrator of Debtor's estate, and in an attempt to quickly conclude Debtor's case, made two large payments to Toby L. Rosen, the chapter 13 panel trustee ("Trustee"), resulting in a general unsecured creditor dividend of 39.16%. Because Debtor's chapter 13 plan only calls for a 30% distribution, Debtor argues that any overpayment should be returned. In opposition, Trustee argues the excess distribution was proper under the language of Debtor's chapter 13 plan. Both parties have filed briefs in support of their respective positions. The following constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

   The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and

division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

**Facts**

Debtor commenced his bankruptcy case on February 21, 2011, claiming assets valued at $87,980.00 and liabilities of $89,558.00. Debtor's initial chapter 13 plan, also filed on February 21, 2011, proposed monthly chapter 13 plan payments of $664.00, resulting in an estimated dividend of 40% to general unsecured creditors. Trustee objected to Debtor's initial plan, raising concerns about feasibility and that Debtor's disposable income should allow for larger monthly plan payments. Debtor filed his first amended chapter 13 plan on May 23, 2014, which was subsequently confirmed on September 8, 2011. Debtor's confirmed plan promises full payment on priority tax claims and a secured loan, as well as a 30% dividend to general unsecured creditors. In order to reach the payout amounts, Debtor's chapter 13 plan originally called for monthly plan payments of $750.00 for sixty months. However, in order to settle Trustee's objection to confirmation, the parties filed an agreed order increasing Debtor's monthly payments to $800.00. Debtor's plan has not been modified post confirmation.

Debtor passed away on September 20, 2013, approximately thirty-one months into his sixty month chapter 13 plan. Becker was appointed as the administrator of Debtor's estate, and informed the court of her intention to complete Debtor's chapter 13 plan. Becker continued Debtor's monthly plan payments for seven months and then made two larger payments totaling $17,686.00 on May 21, 2014 ("the Final Payment"), intending to complete Debtor's chapter 13 plan. It is undisputed that the Final Payment resulted in a 39.16% distribution to general unsecured creditors, well in excess of the 30% dividend in Debtor's confirmed chapter 13 plan. In total, the Final Payment resulted in an "overpayment" of $4,711.32.

When filing a chapter 13 plan, a debtor submits a form titled "Chapter 13 Form Plan Summary" (the "Plan Summary"), which is a truncated version of the official chapter 13 plan. The Plan Summary instructions state that the "full length form controls over the terms of this summary." The full length form is known as the "Original Chapter 13 Form Plan" (the "Form Plan"), and outlines the terms governing chapter 13 plans. Relevant to the current case, the Form Plan states that all payments to general unsecured creditors "shall be paid, pro rata, to the fullest extent possible, but not less than ____% of the allowed amount or a pot of $____."

Debtor argues that the 39.16% payment to general unsecured creditors is in excess of that contemplated in the chapter 13 plan, and that return of the overpayment is appropriate. If Debtor's payments were insufficient to reach a 30% dividend, Trustee would ask the court to dismiss Debtor's case. Because underpayments require additional funds, fairness dictates that overpayments be returned. Trustee argues the opposite, noting that the Form Plan states that payments to general unsecured creditors shall be paid "*to the fullest extent possible*, but not less than ____% of the allowed amount." (emphasis added). Therefore, under the plain language of

2

the Form Plan, 30% is a payment floor, but payments in excess of that floor can be distributed to general unsecured creditors.

## Law & Analysis

The court first notes that when a chapter 13 debtor passes away in the midst of a chapter 13 plan, if continuing the case is in the best interest of the parties, the case will proceed as closely as possible "as though the death . . . had not occurred." Fed. R. Bankr. P. 1016. Becker informed the court that she intended to complete Debtor's plan, and no objections were filed. The court will administer the case as if Debtor had not passed away.

In a chapter 13 reorganization, a debtor agrees to make monthly payments to a bankruptcy trustee over a three to five year period. 11 U.S.C. § 1322. Any payments a trustee receives are distributed to creditors in accordance with the terms of a confirmed chapter 13 plan. Id. §§ 1302, 1325(a)(1). A debtor's monthly payment amount is based on a number of factors, but largely focuses on the debtor's disposable income. Id. § 1322(a)(1). However, other requirements must also be met, such as full payment on certain priority debts and that total creditor distributions be greater than or equal to distributions from a hypothetical chapter 7 liquidation. Id. §§ 1322(a)(2), 1325(a)(4). When determining what claims should be allowed in a chapter 13 plan, only those claims filed with and approved by the court will be paid. Id. §§ 501–02. Based on the allowed claims, Debtor must pay $5,622.00 in unsecured priority tax claims, $16,040.66 in secured claims, and 30% of $51,624.19 on general unsecured claims. Debtor's $800.00 monthly payment over sixty months results in total plan payments of $48,000.00. Not including interest and various administrative expenses, approximately $37,149.00 is required to pay the priority and secured claims in full while also distributing a 30% dividend to general unsecured creditors.

Once a chapter 13 plan is confirmed, the terms of that plan are binding on the debtor and all creditors, unless the court later approves a plan modification. 11 U.S.C. 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor."). In other words, a confirmed chapter 13 plan is *res judicata* on the terms included within the chapter 13 plan. In re Greenwood, 2014 WL 3865363, at *2 (Bankr. N.D. Ohio 2014). In the current case, Debtor's confirmed plan states that "[a]ll allowed nonpriority unsecured claims . . . shall be paid, pro rata, to the fullest extent possible, but not less than [30%] of the allowed amount." The plain language from Debtor's chapter 13 plan makes 30% a payment floor, but does not appear to limit payments in excess of 30%. Official forms, such as the Form Plan, do not have the same force as provisions of the Bankruptcy Code, but "shall be observed and used with alterations as appropriate." Fed. R. Bank. P. 9009. While the court understands Debtor's fairness argument—a trustee should not be able to demand increased payments when payments fall below the floor and also retain payments in excess of that same floor—the court will not disregard the Form Plan.

However, the lack of an upper payment limit in the Form Plan does not make all excess plan payments available for distribution. For example, a trustee may not disburse plan payments in excess of a creditor's allowed claim. 11 U.S.C. § 502; Ford Motor Credit Co. v. Stevens (In re

3

Stevens), 130 F.3d 1027, 1030 (11th Cir. 1997); United States v. Richman (In re Talbot), 124 F.3d 1201, 1209–10 (10th Cir. 1997); In re Windom, 284 B.R. 644, 648–49 (Bankr. E.D. Tenn. 2002); United States v. Clifford (In re Clifford), 255 B.R. 258, 266 (D. Mass. 2000). If the total amount of the allowed claim is the upper limit, and the plan percentage is the floor, at what point are distributions between those two extremes significant enough to require a court approved modification?

To answer this question, the court must first evaluate the difference between "percentage" and "pot" chapter 13 plans. A percentage plan occurs when a debtor agrees to pay a certain percentage to general unsecured creditors, and the debtor's payments are modified to conform to the stated percentage. In re Dougherty, 2007 WL 2890969, at *3 (Bankr. N.D. Ohio 2007). A pot plan, on the other hand, calculates the amount a debtor can pay over the course of a plan, and distributes that money in accordance with the plan's distribution scheme. Id. It is common for a chapter 13 plan to be couched in percentage language, but actually be a pot plan. For example, in In re Dougherty, the debtor's chapter 13 plan called for "allowed nonpriority unsecured claims . . . [to be] paid, pro rata, to the fullest extent possible, but not less than [20%]."[1] Id. The court initially estimated the general unsecured creditor dividend percentage based on the claims listed in the debtor's bankruptcy petition. Id. at *1. However, as often occurs, the value and number of creditors filing claims with the court differed significantly from that listed on the debtor's petition. Id. at 2. Therefore, even though the confirmed plan proposed to pay 20% to all general unsecured creditors, the significant difference between the value of the claims in debtor's petition and the actual allowed claims significantly altered each general unsecured creditor's dividend. For example, in a true percentage plan paying 20% to all allowed general unsecured creditors, a reduction in the allowed unsecured claims from an original estimate of $100,000.00 to $50,000.00 would result in total plan payments being reduced by $10,000.00, or a reduction of approximately $167.00 per month over a sixty month plan.[2] Therefore, unless a debtor's monthly plan payments change when allowed claims differ from the bankruptcy petition, the debtor's plan is not based around a specific percentage payout, but instead on the monthly disposable income a debtor can pay into the pot. Id.

In the current case, Debtor's plan uses percentage language essentially identical to In re Dougherty, stating that Debtor will pay each general unsecured creditor "to the fullest extent possible, but not less than [30%]." However, the current facts differ from In re Dougherty, as the claim bar date passed before confirmation of Debtor's plan, giving Trustee an accurate representation of allowed general unsecured claims. Even with this specific information, Debtor's plan payments do not appear to be based on a projected 30% payout to general unsecured creditors. Debtor has three claims to be paid in full: priority tax claims of $5,247.00 and $375.00 and a secured claim of $16,040.66. Debtor also has $51,624.19 in allowed general unsecured claims, which requires a payout of $15,487.26 to reach the 30% dividend. Combined, a true chapter 13 plan proposing to pay 30% to general unsecured creditors would require total plan payments of approximately $37,149.92,[3] or around $620.00 per month. Debtor's first

---

[1] This is essentially the same plan language currently before the court.
[2] $100,000.00 - $50,000.00 = $50,000.00 x 20% = $10,000.00 / 60 months = $166.67
[3] The court notes that interest is likely required on the secured claim and that attorney's fees and other

4

amended chapter 13 plan proposed payments of $750.00 per month for sixty months, totaling payments of $45,000.00 over the life of the plan. However, before plan confirmation, Debtor and Trustee agreed to increase Debtor's monthly plan payments to $800.00, further increasing the difference between Debtor's actual payments and the amount necessary for a 30% dividend.[4] If Debtor's chapter 13 plan was a true percentage plan, the increase in monthly payments would have resulted in a decrease in plan length.[5] Based on the above, Debtor's confirmed chapter 13 plan, even though stated in percentage language, is a pot type plan that incorporates a payment floor of 30%.

When dealing with pot plans, courts have consistently held that changes in the dividend paid to general unsecured creditors is not a modification requiring court approval. Id. at *4; see also In re Jafary, 333 B.R. 680, 685 n.4 (Bankr. S.D.N.Y. 2005). Because pot plans focus on the total amount paid into the plan, changing the distribution percentage does not normally alter the length or amount of a debtor's plan payments. In re Dougherty, 2007 WL 2890969, at *4. However, even if a change in the general unsecured creditor distribution percentage would affect a debtor's total plan payments, a modification still may not be required. For example, in In re Dougherty, the debtor and trustee agreed to a chapter 13 plan that would pay a 20% dividend to general unsecured creditors, but because fewer claims were allowed than initially estimated, the plan payments resulted in a 64% dividend. Id. at *2. Approximately two years into the plan, the debtor became ill and sought a downward modification under § 1329. Id. At the time of the modification, general unsecured creditors had already received a dividend of 43.4%. Id. If the trustee had been paying the general unsecured creditors at the initial 20% dividend, all of the debtors' priority and secured claims would have been paid in full before the modification. Id. Even though the trustee's distribution methodology was harmful to debtors, because the confirmed chapter 13 plan utilized pot methodology, when total payments remain constant a recalculation of the general unsecured creditor dividend does not require court approval. Id. at *4–5. However, a creditor cannot receive distributions in excess of the total pot without a court approved modification, and any excess payments should normally be returned. In re Jafary, 333 B.R. at 687–88.

Debtor's confirmed plan calls for a chapter 13 pot of $48,000.00.[6] Even though Trustee paid out a larger dividend to general unsecured creditors that stated in Debtor's plan, a modification is not necessary as long as total distributions are less than the pot. As of July 28, 2014, well after the Final Payment, Debtor had paid $47,603.00 into the plan. As Debtor's payments are below the plan's total pot, and also above the 30% floor stated within Debtor's plan, Trustee's distributions are in-line with the plain language of the Form Plan and the text of

---

administrative costs would also be paid by the plan.
[4] Actual interest paid over the life of the plan was $1,190.73, and actual attorney and administrative expenses totaled $5,474.04. Combined, these additional expenses add $6,664.77 to the plan. Debtor's plan payments at $800.00 per month for sixty months total $48,000.00, which, even after adding interest, attorney, and administrative expenses, is still over $4,000.00 more than required for a 30% payout.
[5] If a party objects to confirmation, the applicable commitment period for an above median debtor is sixty months. Because Debtor is above median, shortening the chapter 13 plan to stay within a specific percentage payout to general unsecured creditors likely violates the Bankruptcy Code. 11 U.S.C. § 1325(b).
[6] Payments of $800.00 per month multiplied by sixty months

5

the Bankruptcy Code. Trustee is not required to return any portion of the Final Payment to Debtor.

## Conclusion

Based on the above reasoning, Debtor's Motion for Turnover is **DENIED**. An order will be entered simultaneously with this opinion.

It is so ordered.

# # #

**Service List**

**Ronald E Faidley**
c/o Christine F. Becker
2960 Waterford Drive
Lewis Center, OH 43035

**Morris H Laatsch**
Kaffen & Zimmerman
520 South Main Street
Suite 500
Akron, OH 44311

**Toby L Rosen**
Toby L Rosen, Trustee
400 W Tuscarawas St
Charter One Bank Bldg, 4th Floor
Canton, OH 44702

6

11-60477-rk    Doc 78    FILED 09/29/14    ENTERED 09/30/14 08:12:01    Page 6 of 6